Falon Family, L.P. v. Goodrich Petroleum Corp. All right, sir. Mr. Brame. Hodge. For the appellant. I'm sorry. I'm not looking. Hodge is excused. May it please the Court. My name is John Hodge from Weiner, Weiss & Madison in Shreveport, and I represent the Falon Family. The central issue in this case is whether a debtor in possession or a trustee exercising its strong arm powers under the Bankruptcy Code as a hypothetical bonafide purchaser of real property can retain the benefits of a recorded ratified lease but shed the burdens imposed by the unrecorded portions of that same ratified lease. Stated differently, if the trustee decides to administer the mineral lease that has been recorded, must he accept all the provisions in the lease, including the unrecorded provisions, or may he shed the unrecorded burdensome provisions? Let me ask you, if he decides to assign it, what will the assignee be required to do? For a trustee to assign the lease, he has to assume the lease. It's assumption and assignment. The law of this circuit and the law of all other circuits in the context of Section 365 says that a trustee cannot cherry-pick the good provisions with the burdensome provisions. Well, in the context of this deal, what would that mean? In the context of this deal, I would suggest to the Court that the result should be the same as it would be under the 365 analysis because this case involves an integration clause, and the integration clause was upheld by both the district court and the trial court, meaning that all three of these components, remember, there's a settlement agreement, a promissory note, and a ratified lease or a ratification document. It's more than just a ratified lease. The point I'm getting to is that I have some familiarity with bankruptcy law, and I always thought the mineral leases, especially a working operating interest lease, would be an executory contract. Well, there is actually a split of law on whether or not a Louisiana mineral lease is an executory contract or whether it is a real right. Judge Parker from the Middle District in the 80s and 90s did the Texaco case where he determined that it was, in fact, an executory contract. That was a U.S. district judge. But with respect to there is another decision called WRT Energy from a bankruptcy judge, Judge Schiff, in the Lafayette Division, and he concluded that it is a real right. I frankly think that the better view is that it is a real right. Under Louisiana law, the Mineral Code itself defines a mineral lease as an immovable, an incorporeal immovable, and, frankly, it is subject to the laws of registry. That is beyond dispute. Right, but, I mean, in Texas, is it the same in Texas? It is my appreciation that a Texas oil and gas lease would be an executory contract, and we are dealing here with a Louisiana oil and gas lease. I didn't mean to confuse you. I would like to begin our analysis with a statement, which is the public records doctrine does not apply to this case. As a result, the courts below erred by concluding that the debtor in possession was a third party for purposes of the Louisiana registry law when it exercised its strong arm powers and stood in the shoes of a bona fide purchaser of a mineral lessee's interest. Now, why is this important? It's important because under our Louisiana public records doctrine, it only protects third parties. If you're a party to the instrument, you're bound by unrecorded portions of it. Remember, my case centers on this integration clause, and so I have something of record, but I have unrecorded components. That's why that integration clause is important. If the public records doctrine does not apply, that is, if the trustee, or in this case the debtor in possession, is not in fact a third party for purposes of the Louisiana public records doctrine, then it's bound by all of the unrecorded portions. The trial court assumed without any analysis that the trustee would in fact be a third party. I have to tell you it's kind of a gut reaction of every bankruptcy lawyer that a trustee is a third party. My gut reaction. And, Your Honor, I serve as a trustee myself and have for the past 15 years, and I routinely take the position that I am a third party in other contexts. In this context, however, the Louisiana public records doctrine tells us who is and who is not a third party. There is a code article directly on point cited in the brief. It is Louisiana Civil Code Article 3343, and it deals with assumptions. If you assume the contract, you're no longer a third party to that contract for purposes of the Louisiana public records doctrine. Actually, the code article says this. A person who by contract assumes an obligation or is bound by contract to recognize a right is not a third party with respect to the obligations or the right or to the instrument creating or establishing it. Now, what that means is that for purposes of the public record doctrine, you're not a third party. You would be bound by the unrecorded portions that do not appear. What is the difference between assuming a contract and being the assignee of a contract? Actually, according to our Louisiana Mineral Code, I would say there should be no difference, and that is a different code article that I cited in the brief, and that is Article 128 of the Mineral Code. That's LARS 31 colon 128, and that deals with an assignee of a mineral lease. And, Judge Jones, the question is right on point. It says, to the extent of the interest acquired, an assignee or a sublessee acquires the rights and powers of the lessee and becomes responsible directly to the original lessor for the performance of the lessee's obligation. If you assume the lease, you become a party to the lease. You're no longer a third party. If you're not a third party, for purposes of the Louisiana public records doctrine, you're stuck with all of the lease, warts and all, the recorded portions and the unrecorded portions. Why would the trustee, though, not be the third party under and it gets to this Zeta case? Yes, because he is exercising, in this case, as a debtor in possession, but it's the same thing. The trustee is exercising the rights. He has all of the rights and powers of a hypothetical bonafide purchaser of real property. In this case, the real property is a contract. I know that's kind of odd to think of it, but Louisiana considers this contract, this mineral right, to be a real right. And so he is stepping into the shoes. He gets whatever rights a purchaser of that contract would get under Louisiana law. Well, we know what rights and obligations that would be. I just read it. I have two code articles, right on point, that says if you assume the lease, if it's assigned to you, or you assume the lease, you step into the shoes. If the logic of Zeta, and you obviously understand this area well, is that really what we're doing is imagining a fiction. We've got a pre-petition Goodrich, and we've got a post-petition trustee who is a bonafide third party, isn't stepping in and becoming indistinguishable from. Why isn't that the right reading of that Zeta decision? Because Zeta says, and the quote from Judge Wiener is that he steps into the shoes of the hypothetical predator or purchaser. Judge Wiener actually says, it does not give the trustee either stilts or seven-league boots to augment the ordinary footwear of the hypothetical predator or purchaser. Whatever rights a hypothetical purchaser would get under Louisiana law, that is what the trustee would get. So why is the ---- It says hypothetical bonafide purchaser. Doesn't that signal that you're talking about a third party? I actually, you know, my gut reaction when I looked at this statute was that it actually said third party. And I was pleased on my client's behalf that it does not say bonafide third party. It says bonafide purchaser. And so you get whatever rights a purchaser would get under Louisiana law. And I would suggest that, Your Honor, with respect to Article 128, this court has already addressed the application of 128 with respect to the Louisiana Public Records Doctrine. I heard you ask in the other case that came before us, what is your best case. I would say my best case is a case decided by this circuit. It is one that is not cited in my brief. I would like to submit a 28-J letter to give you the citation. But it is Singer v. Continental Illinois Energy Development Corp. found at 786 F2nd 647. And I'll be glad to do a 28-J letter to formally give you the citation. Well, just hand it to the bailiff. Yes, Your Honor. And that case says, it stands for this proposition, that applying Article 128 of the Mineral Code, an assignee of a mineral lease has privity of contract under Article 128, and therefore the law of registry has no bearing. So I would say that this court's prior precedence would say that the Public Records Doctrine does not apply. The same would be true of the judicial lien creditor prong. The same result would occur, because in that case the lien creditor does not get to wipe away the unrecorded provisions of the mineral lease. The lien creditor has a right in our state to ask the sheriff to seize and sell this contract. We do not have self-help in the state of Louisiana, so he would have to ask the sheriff to seize and sell this contract. And what would the sheriff do? He would sell it to an ultimate purchaser who stands in the shoes of the mineral lessee. Now, I don't want to put all of my eggs in one basket, because I believe that if the Public Records Doctrine does apply to this case, the Fallon family has complied with that Public Records Doctrine. As a result, Goodrich would be bound by the terms of the integrated document, which includes the ratified document, the ratified lease, the settlement agreement, and the note, which, of course, Your Honor, recorded. It didn't signal that there was anything unpaid about the consideration, does it? It does. It indicates with respect to the consideration that promises were exchanged. There is no indication that performances of all of the promises occurred. Good and sufficient consideration something. It does. Your Honor. It says in hand paid, doesn't it? It does not say cash in hand paid. No, I know it doesn't say cash, but it says like good and sufficient consideration in hand paid or something. It does. It says promises and covenants were exchanged, a forbearance occurred, a release occurred, an acknowledgment occurred, as well as other valuable consideration. I would like to answer Judge Davis's question about whether or not a document, a lease, is required to say whether all consideration has been paid. The Fallon family could have recorded a very skimpy document called a notice of lease. In Louisiana, in lieu of recording the entire lease, the parties may record a notice of lease. Is your point here to distinguish a lease from a sale? Yes, Your Honor, because the — Well, is that the bottom line? Yes, Your Honor. There's one more point, Your Honor, about that. Okay. There are only four things, Your Honor, that are required under Louisiana law with respect to recording a notice of lease. One is the party's names and addresses. Two is the property description. Three is the date of the lease and the term. And four, with respect to a mineral lease, it must also include the primary term of the lease as well as any additional period during which the lease may be maintained by the payment of rentals. My point is that the document that was recorded, that is in the record before this Court, complies with that. And as a result, there is no duty of a party to a lease to have all these other things that popped up in the bankruptcy case, such as a description of the dissolution rights. The bankruptcy judge noted that there were no dissolution rights mentioned in the recorded ratified lease. Well, Your Honor, I just gave you the statute. It's cited in the brief. For the record, it's LARS 9,2742. It's not required. It is absolutely not required of a party to a lease to have put these things. There is no duty to record in the property records the existence of statutory remedies or a factual scenario in which would give statutory remedies to dissolve the settlement agreement. There is just the law on lease. Let me ask, did you argue this case to Judge Isker? I did not. I was not the one who argued it. Well, Judge Isker is a former real estate lawyer and a very smart guy. And what do you think would have led him so far astray from the arguments you're making? He told the Court that he struggled with this. Judge Isker did. Judge Isker said in court he struggled with this. And we all know Judge Isker. He is a learned judge. He is a very good bankruptcy judge. He gave this thoughtful analysis, frankly. I just disagreed with the end result because it's not required of any party to a lease in Louisiana to put these things a record. To your point, is there a difference between a sale and a lease with respect to what needs to be disclosed? Yes. And in my view, the Court just took a wrong turn and took all of those cases dealing with dissolution and said you need to disclose these things of record. All of those cases dealt with a sale. Okay. Well, let me just ask you, though. The Leeward case involves mineral lease, does it not? It involved an assignment of lease. It did not involve so it was a sale. It did not involve a mineral lessee's interest. It did not involve that. But that's a major difference between Leeward in this case in your view. That is correct, Your Honor. The Leeward case was a sale. This is involving a lease. Okay. All right. My time has expired. You have time for rebuttal. Thank you. Thank you. Okay. All right. Mr. Brame. Yes, Your Honor. I'm going to please the Court here on behalf of Goodrich Petroleum Company and Goodrich Petroleum Corporation. What's your name? Frank Brame. Oh, okay. Thank you, Your Honor. Goodrich filed bankruptcy and when it did, all the property of the company became property of the bankruptcy estate and the creditors as a whole, as represented by the trustee, was vested with all the property rights of the debtor, including all the real property rights, and they didn't just get those rights in any fashion. The trustee, representing the creditors as a whole, received those property rights with all the rights and powers of a bona fide purchaser and a judicial lien creditor under 11 U.S.C. 544. And that's what the bankruptcy code provides is that, again, the trustee gets the highest rights to that property unless there's another party that can come along and show a superior legal right. Determined under state law. Correct, Your Honor. And in this case, we have a ratification of a mineral lease and the appellants are suggesting that their right to dissolution would be superior to the trustee's rights. And our answer to that question is no, that's just not the case, because under Louisiana law, dissolution is not effective against a third party where the real property records show there was no credit sale. And this is the essence of Louisiana Civil Code 3342, which is the provision that states that a party cannot contradict the terms of a recorded document to the prejudice of a third party. No difference between sale and lease? No difference between sale and lease. I'm glad that they brought up the Title 31 of the Mineral Code, Section 128, because if you look at the comment, look at that statute, the first comment under there is that, let me say it correctly, application of Articles 2448 and 2449 to assignments of mineral leases subjects these transactions to the law of sale. So the Mineral Code says that these mineral lease transactions are subjected to the law of sale. And so we cite cases that have mineral leases in them, but we also cite cases, a number of cases, that are sale cases. And those apply to mineral lease and mineral ratification cases in the exact same way. They do not have a single case, they do not have a single case where the recorded document states that all the consideration has been paid and then the court came out and said, well, you can get dissolution anyway. Well, do you have a single case that involves a mineral lease where this argument was made? Well, the Leeward Operators case is a... He said that's a sale or assignment. Well... Or not a... It's a sale of a mineral interest in that case. So I would say it is a mineral lease case. I mean, what the trustee accedes to here, what bothered me about this case, and I'll just, I mean, apparently I'm just wrong in my interpretation of Louisiana law, but what bothered me about this case is if this were in Texas and it were a mineral lease, you couldn't cherry pick, take the good and leave the bad. You have to assume and assign, right? Which would have meant that they'd have had to pay the outstanding $900,000, whatever it was. Now, and you're trying to say that under Louisiana law, the result is different because of these, you know, dissolution and the recording statutes and so on. Well, yeah, I'm not actually suggesting that. I think the result in Texas and Oklahoma and the other oil and gas states would be the same. I think, you know, in these large, these oil and gas bankruptcies, the mineral leases don't go through an assumption or rejection process in them. They're considered to be... If you're the operator? I mean, this guy was the operator. They're considered to be, that's right, they're considered to be non-executory contracts, more akin to a piece of real estate. And so they just vest in the trustee. And the trustee is subject to the recorded interests in real estate and not subject to unrecorded interests. And that is kind of the conventional rule in all the secure transaction cases. The case that I thought was interesting that I wanted to point out to you a little bit about is the LeBlanc case, which is a Louisiana appellate court case that is not in the bankruptcy context. It's in the insurance rehabilitator context. So it's a state law bankruptcy. And in that case, they don't have an 11 U.S.C. 544 to fall back on, but the court in that case thought through this process and said, look, the rehabilitator of this insurance company has got to be able to rely on the public records. They're a third party. And if you've got a recorded... Let me ask you a question. Yes, ma'am. How big was this Goodrich Petroleum? How big was it? I think the total amount of claims in the case... I don't know... To operate a bunch of leases? Yes, Your Honor. So several hundred million dollars of debt in the case. Okay. Several hundred million dollars. Well, the trustee surely did a certain amount of due diligence. And in the file on this case, the trustee would have seen that the lease was entered into originally in 1954, right? Correct, Your Honor. And that there had been a lease pendants filed recently, followed by a ratification, correct? Correct, Your Honor. Okay. Is there any... And a dismissal of the lawsuit of public record. The lease pendants and you have a dismissal of the lawsuit, public record, and a public record of the ratification saying that the mineral lease goes forward. Okay. So your contention would be to put together those... Nothing in those documents gave any indication that Goodrich owed money on an outstanding agreement in connection with the ratification. Correct, Your Honor. And to point out the ratification, I thought the way it was quoted in the brief, in the appellant's brief, requires a little bit of clarifying what that document says. The ratification doesn't say anything about a promissory note. It doesn't say anything about any money being owed. It doesn't make any reference to that. Furthermore, it confirms to the reader that that is not the case, that is absolutely not the case. It says, now, therefore, for the promises and covenants exchanged below and other good and valuable consideration exchanged by the parties on or near this date, the receipt and sufficiency of which is hereby acknowledged, the parties agree. And then it goes one, two, three, four, which are the ratification elements. It doesn't say anything about money owed or money due. It says that the consideration has been paid on or near this date. And what the real estate lawyer, I mean, the reason this is put in here is to confirm to the reader of the public records that the consideration has been paid. This is not subject to a failure of consideration issue. That's why it's in there. Were you going to get to 3343? Yes. I'm going to turn to that next. 3343 argument is which they're saying the trustee is just not a third party under Louisiana law. That's a seriously wrong argument, and that's for four reasons. And I want to walk through those with you. First is the NRIZETA case, which is a Fifth Circuit case that just holds the polar opposite of that. In that case, the Fifth Circuit just specifically looked at this intersection between 11 U.S.C. 544 and the Louisiana Public Records Doctrine. And what it held was that for the purposes of the Louisiana Public Records Doctrine, a creditor or a purchaser is a third person. Applying that doctrine to Section 544, it is clear that the trustee is a third person for the purposes of the public records when he assumes the status of a hypothetical creditor or a bona fide purchaser as of the commencement of the case. So I think we have controlling Fifth Circuit law on this point. Second ---- But I've heard your opposing counsel saying other language in there implies steps into the shoes of, the privity, the Singer case that you haven't had an opportunity to look at. That I haven't seen. But those are not to me. Those are not. That's an unremarkable proposition. When something is assigned to you, you step into the shoes of it subject to the public records doctrine. So a party, if you have a two-page document, the first page is a deed and the second page is a mortgage and you're buying a house. You buy the house. You record the deed. You fail to record the mortgage. And you sell the house to someone. That someone does not take the house subject to that mortgage. Okay? They've stepped into the shoes of that deed that they took, but the mortgage is unrecorded. To accept their argument, I'm sorry. Well, I did pause, but you both know these cases so well. The Louisiana Supreme Court, how do you pronounce it? Bolani decision? Is that familiar to you? Bolani. Bolani. Yes. Would it always be true that the third party wouldn't take it subject to the unrecorded mortgage? It would always be true that if, yes, if the third party's interest came before the recordation of the mortgage, right? Yeah. That would always be true. The second part, a real big problem with their argument under 3343 is that it ignores the judicial lien creditor prong of 544. It's completely addressed at the bona fide purchaser prong. They're saying, look, if you purchase, you acquire, you assign, you assume, then you have to accept all the unrecorded interest. I think that's wrong. But 11 U.S.C. 544a1 talks about a judicial lien creditor. Clearly someone, if you're injured on somebody's property and you go out and get a judgment and you put a lien on the property, you're a third party. You're a third party. There's no possible argument that that person's not a third party. They've completely, in the briefs, he talked a little about it a moment ago, but I mean in the briefs, completely skipped over that point. So even if you grant them their 3343 argument, I think we still win under 11 U.S.C. Is 3343 part of the general sales provisions or the mineral code? It's in the civil code. So it's part of general sales? It's part of the, I would say, yeah, the general law, yes. It's part of the public records doctrine, sure. Okay. But there's no question that the mineral code and the mineral leases, that the public records doctrine applies to that. Article 3338 of the civil code says that any transaction involving a movable has to be And section, the mineral code, 31 colon 18, section 18 says that a mineral lease and anything modified in a mineral lease is an incorporeal movable and is subject to the laws of registry. So there's no question that all this law applies. The third point I want to say about this 3343 argument is that it just proves way too much. And it goes back to that example I was making about the mortgage where you've got the first page is a deed and the second page is a mortgage. I mean, if you accept this argument, anybody who purchases something relying on the public records and there's an unrecorded interest, they're going to take it subject to that unrecorded interest based on this argument that we're getting today. It's just way too vast and way too broad of an argument to be a reasonable assessment of what the law is. What do you do with the idea that you only have bare bones recording requirements for leases? Okay, so that's a great question. Which makes a good deal of sense, actually. Yes, and I think that completely supports our point. I mean, this is about inquiry notice. And so, yes, you can file a memorandum of lease, and you can put out that it's out there, and then the reader knows that you've got to find out what's in that lease. The point is that that did not happen here. There is nothing that says memorandum of settlement agreement, memorandum of promissory note, or that there's going to be payments. Well, I didn't have to. I mean, there are leases all over the place for multi-story buildings and vast mineral holdings, and you never put all the documentation on the recorded. You never identify it in the recording instruments, do you? Because it can change, among other things, right? But the parties are on notice that it exists, and so they know they have to go get that document. It's not a lease here. It exists. And the ratification, but there's no knowledge of a promissory note. There's no knowledge of a payment, an unrecorded payment that's available there. Well, the third party, so go ahead, excuse me. What the cases say, what Professor Yiannopoulos says in the Louisiana Civil Law Treatise and all the cases that we cite say is that if there's an inkling in the document that there's been a credit sale, then dissolution is a possibility. If the document reflects that all the consideration has been paid, then the third party is going to prevail in that case. And, I mean, we've got just a number of cases, and the Louisiana Civil Law Treatise tells us that that's the correct outcome under Louisiana law. Does that mean you cannot have dissolution in the case of a financed transaction? You can have dissolution in the case of a financed transaction, and, in fact, they cite a case that I think is very good for our side called Maniscalco v. The United States where you've got a financed transaction, and you have a widow. She sells her house to this gambler, tax evader, bad guy, and it's a credit transaction. And they record the document in the public records, and it explains how he's got to make these payments. And then the IRS comes in later and puts a lien on the property against this fellow, and the IRS is saying, hey, our lien is superior, and the court says, no, no, no, you can get dissolution in that case because there's a credit sale and it's in the public records. And so there's the case. That's the converse of all the cases we cite that tells us, okay, dissolution with the correct recording, dissolution can be there. I mean, they could have in this case recorded the promissory note or a reference that there was payments due on credit, or they could have negotiated for security. Isn't that the way most leases work? I mean, like many commercial leases are financed, right, by financing? So you're saying that they all have to ‑‑ if you've got, you know, you're building a building and you're leasing to tenants, and the tenants are borrowing money,  and so they're mortgagors of the leases, and so you're saying all that, well, I guess that would go on the record because it would be a mortgage of some sort, right? Exactly, precisely. And they would put in the document that there's a mortgage. And if you don't ‑‑ Bank of America sells a house or handles the financing on a house, and they don't record their mortgage. I thought the Louisiana law was a little unclear on if it didn't specifically say anything, but it was much clearer if it explicitly said consideration is sufficient and complete. Right? Those are different questions. I think if it's silent on the topic, there's some good authority for us on that. But if it says that the consideration has been paid, then, yes, the authority becomes overwhelming. Let me address just at this point briefly our alternative grounds to affirm that I wanted to make sure that I covered just at a moment. Goodrich did not breach the settlement agreement, okay? As a threshold question to this whole matter, the appellants have got to show that Goodrich breached the settlement agreement, okay? And if they didn't breach it, we don't have a case at all. I just want to respectfully submit to you that Goodrich didn't breach the settlement agreement. You're the trustee. You're the trustee, right? I'm representing the merged, yes, reorganized debtors who are the debtor in possession, half of the trustee. The fallback position on this is that Goodrich is the Fallon family are unsecured creditors, right? Correct, Your Honor. So what's your point about didn't breach? Well, their claim is that they have a right to dissolve. They don't have a right to dissolve if there wasn't a breach. But you owe them $900,000. So how can that not be a breach? Well, because there's a promissory note that's a breach, and there's a settlement agreement that was not breached. So the settlement agreement provides— The settlement agreement had the terms of the promissory note in it, didn't it? Well, right. So that's the dispute is that the promissory note is integrated with the settlement agreement. So if you look at the settlement agreement, there's only two obligations for Goodrich. Goodrich has to pay $650,000 up front, which they did, and Goodrich has to deliver subsequent a promissory note, which it did. Goodrich delivered a promissory note. Now, the settlement agreement that was originally given to the trial court versus the one that was ultimately corrected and is the one in the record, if you look at the motion for consideration that appellants filed at the bankruptcy court, it's the one that they agree and we agree is the correct version of the settlement agreement. It is a settlement agreement with forms of promissory notes behind it. It says you're going to need to subsequently deliver a promissory note that is in the form attached. And so— You better quit while you're ahead on that one. Okay, well, thank you. So the settlement agreement does say, and I'll just make one other point, settlement agreement does say in it that the promissory notes are separate notes. You objected to the proof of claim? We have not objected to the proof of claim. We've extended the deadline to object until after all this is over, I believe is what happened. The—no, this last point I was going to make on that is that the settlement agreement says that the promissory notes specified herein are separate notes. Let me also make this—let me also make this point. The appellants have made throughout—have argued that, well, how is it fair that the debtor gets to keep the benefit of these leases and not have to pay the burdens of those leases, and it's kind of a fairness point. And I just want to point out that that's really not—that's really just not correct in terms of how bankruptcy works. Every creditor in the case, all the bondholders and so on and so forth, did not get what they bargained for. They—if you— Well, if you look at it in terms of the right to continue to be in the working— to be the operator on these oil and gas leases, then they have a right to whatever compensation scheme is provided for in that lease as long as they continue to be the operators. So from that standpoint, there's little doubt that they are keeping the good part and throwing away the bad, and that doesn't often happen in bankruptcy. Well, and for—but again, so the— But, I mean, that's not—you know, that's not to say that what the law is here, but just from the standpoint of this is not like an ordinary lease that you'd have to assume or reject under 365 and cure the deficiencies in order to assume. That's correct, Your Honor, and the court ruled that it's a non-executory contract. It doesn't have to be assumed or rejected under 11 U.S.C. 365, and that's a point that they did not oppose at the appellate level. I know. That's why I was asking those questions. And so it is a non-executory contract, and like all the non-executory contracts, given a trade creditor that sells pipe to Goodrich, take a trade creditor that sells pipe to Goodrich for $3 million, Goodrich gets to keep the pipe. They still have the pipe. They're using the pipe on wells today, and they did not have to pay the $3 million. That $3 million was dealt with under the plan and confirmation order in the bankruptcy, and this is the same thing. They settled their claim. They gave an unsecured promissory note for their claim. It didn't have a security interest. It wasn't recorded, and they were at risk of a bankruptcy with respect to that $900,000, just like a trade creditor that sold pipe to Goodrich, and now Goodrich is owned by all those creditors. That's who has the equity in the company, and they're the ones who. . . Just for my interest, do you have any forecast, whatever, on what the payout to unsecureds is going to be? I do not, Your Honor. It's modest, but I don't know what it is. Okay. Thank you. Thank you. Okay, Mr. Hodge. The question was posed by Judge Jones to counsel. Question, what about the bare-bones recording document? Do you have anything to say about that? Question, what about the inquiry notice provided for by these bare-bone documents? Response, there is no notice of lease or memorandum of lease. Your Honors, it does not matter what it is called. There is no requirement under Louisiana law to call it a notice of lease or a memorandum of lease. We can all agree that the ratification document that is filed of record complies with LARS 9-2742. It could be called blah, blah, blah. It does not matter. But it's also undisputed that what was recorded wouldn't have given notice about the promissory note. Correct. It would not have given notice about the promissory note, but it is inquiry notice. It's not required under Louisiana law. Judge Jones is absolutely correct. This is the normal way it is done. In Louisiana, just like it is in Texas and other states. What about my question is, does Louisiana law differentiate between silence, hence inquire further, and consideration was sufficient? It might for sales, not for leases. We know what the recording requirements are for leases, and as Judge Jones described it, it's bare-bones. And I've complied with that. And once the statute is really strong, once you comply with the bare-bones notice inquiry elements, everybody is bound by the lease, even the unrecorded portions. As Judge Jones noted, the typical scenario is you don't even record the amount of rent. Well, the parties are bound, but what about a third party? Third parties are bound by the unrecorded element. So, for example, Judge Davis, if the notice of lease doesn't mention how much is paid in rent every month, which is typically not disclosed in the public records, third parties are, in fact, bound by that. So with respect to the inquiry notice, when it comes to leases, the law of registry requires disclosure of the existence of the lease to third parties. And then in the lease scenario, it is assumed there will always be unperformed obligations. There are lawyers in my office that spend days preparing tenant estoppel letters and landlord estoppel letters. It's a typical document that is found in most asset purchase agreements when there's a buying and selling of commercial property. Why do they have these tenant estoppel letters and landlord estoppel letters? It's because you cannot tell from the public record what the lease is about. It is inquiry notice. Judge Jones' question was right on point. Inquiry notice is all that is required. Third parties are put on notice. And in this case, third parties were put on notice about the terms of the dismissal. Third parties were also put on notice with respect to the initial list pendants that was filed. A settlement was done as to some but not all parties. Not all claims were resolved in this lawsuit. A prudent landman looking at the records would have concluded, I need to ask about this lease. I need to find out what the terms are. I need to see what is unperformed. The trial court erroneously concluded that because the disclosures about the dissolution rights were not mentioned in this bare-bones pleading or bare-bones notice, that somehow that made it defective. And he relied upon all of these sale cases. Well, let me – where is this? I know you made this argument in your brief, but your headings are not very helpful. Approximately where was this in your brief? Bear with me one moment. Okay. Cite me the statute again. The statute is 9 colon – 4742. Correct. 2742. That is correct. And in Judge Isker's opinion, where is it that he wrestles with this? He did not address it at all. Nor did he address Article 128 of the Mineral Code, nor did he address Article 3343. His analysis was silent on that. 3343 was not mentioned. 128 was not mentioned, nor was the notice of lease provisions mentioned. Well, I think his feeling about at least 3343 and 128 might have been that the U.S. Code supersedes those, that the terms of 544 hypothetical, you know, the strong-arm clause supersedes those. And I would say, relying upon Judge Lienert's language in the Zeta case, the trustee gets whatever rights are available to the hypothetical modified purchaser or lien creditor that was created under state law. Well, now, Mr. Graham's argument was vis-à-vis 3343 that you were proving too much, that you would undermine a whole lot of, you know, lien transactions or sales subsequent transactions by saying that these things need not be recorded. With respect to lease? Or that reference about not fully paid and so on. That might be the case with respect to sales. There is no risk of that happening with respect to leases. It's a bare-bones inquiry notice, and as you note it yourself, Your Honor, that is the typical scenario. I see that my time has expired, but I'll be glad to answer the questions of the Court. But you're saying the third-party buyer is always on inquiry notice if it's a lease. That is correct. That is absolutely correct. Without exception. Without exception. And that is the standard, whether it's a mineral lease or a commercial lease, that is the standard. It's bare-bones inquiry notice. Okay. I think we have your argument. Thank you. Thank you, Your Honor.